**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **JOHNNY BOWMAN, JR.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **1:2026-CV-_____** |
| | § | |
| **CITY OF SEMMES, ALABAMA;** | § | |
| **AUSTIN COLLIER, in his individual** | § | |
| **capacity; BRANDON MURPHY, in his** | § | |
| **individual capacity; and TODD** | § | |
| **FRIEND, in his individual capacity;** | § | **JURY TRIAL DEMANDED** |
| | § | |
| **Defendants.** | § | |

---

### COMPLAINT

---

Plaintiff Johnny Bowman, Jr., files this Complaint against the City of Semmes, Alabama ("Semmes"); Austin Collier, in his individual capacity; Brandon Murphy, in his individual capacity; and Todd Friend, in his individual capacity; stating as follows:

### I.    PARTIES

1.    Plaintiff Johnny Bowman, Jr. ("Bowman") is and was at all material times an adult resident citizen of Semmes in Mobile County, Alabama.

2.    Defendant City of Semmes (the "City") is a municipal corporation in Mobile County, Alabama, organized under the laws of the State of Alabama. The City is and was at all material times responsible for the acts of its police force (the "Semmes Police Department" or "Semmes PD") and the individual members of said police force. The City funds and operates the Semmes Police Department and, along with Chief Todd Friend, was at all material times responsible for the implementation of the Semmes PD budget, policies, procedures, practices, and

customs, as well as the acts and omissions of the Semmes Police Department and its officers. All law enforcement actions that form the basis of this lawsuit were performed pursuant to policies, procedures, customs, and practices implemented, authorized and/or ratified by the City as a final policymaker for the Semmes Police Department.

3.      Defendant Austin Collier ("Officer Collier") is and was at all material times employed as a police officer by the City and/or the Semmes Police Department and was acting under the color of the law within the line and scope of said employment.  At all material times, it was Officer Collier's duty and responsibility to treat all persons in compliance with the United States Constitution, Alabama law, and the rules, regulations, policies, and/or procedures of the Semmes Police Department. Officer Collier is an adult resident citizen of the Southern District of the State of Alabama and is sued in his individual capacity only.

4.      Defendant Brandon Murphy ("Officer Murphy") is and was at all material times employed as a police officer by the City and/or the Semmes Police Department and was acting under the color of the law within the line and scope of said employment.  At all material times, it was Officer Murphy's duty and responsibility to treat all persons in compliance with the United States Constitution, Alabama law, and the rules, regulations, policies, and/or procedures of the Semmes Police Department. Officer Murphy is an adult resident citizen of the Southern District of the State of Alabama and is sued in his individual capacity only.

5.      Defendant Todd Friend ("Chief Friend") is and was at all material times employed as the Chief of Police by the City and/or the Semmes Police Department and was acting under the color of the law within the line and scope of said employment. At all material times, it was Chief Friend's duty and responsibility to treat all persons in compliance with the United States Constitution, Alabama law, and the rules, regulations, policies, and/or procedures of the Semmes

Police Department. Additionally, Chief Friend was at all material times, along with the City, responsible for the implementation of the Semmes PD budget, policies, procedures, practices, and customs, as well as the acts and omissions of the Semmes Police Department and its officers. All law enforcement actions that form the basis of this lawsuit were performed pursuant to policies, procedures, customs, and practices implemented, authorized and/or ratified by Chief Friend as a final policymaker for the Semmes Police Department. Chief Friend is an adult resident citizen of the Southern District of the State of Alabama and is sued in his individual capacity only.

## II.   JURISDICTION AND VENUE

6.     This Court has original jurisdiction of this civil action because Bowman's claims arise, *inter alia*, under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution.

7.     This Court has supplemental or pendant jurisdiction of the state law claims set forth below pursuant to 28 U.S.C. § 1367(a) because Bowman's state law claims arise out of the same underlying events and form the same case or controversy as his federal law claims.

8.     Venue is proper under 28 U.S.C. § 1391(b) because the Defendants reside in this judicial district and the events and omissions giving rise to this civil action occurred in this judicial district.

## III.   FACTS

### A. Officers Collier and Murphy Wrongfully Enter Bowman's Business

9.     On or about the early morning hours of January 4, 2026, at approximately 3:00 a.m. CST, Plaintiff Johnny Bowman was lawfully sleeping inside his business, Bowman's Auto Air, located at 7461 Moffett Road in Mobile County, Alabama (hereinafter, the "Business").

10.     At that time and place, Bowman was asleep inside a travel trailer he owns that was located inside a garage bay at the Business.  At all material times, the garage bay doors of the Business were closed and so was the entry door of Bowman's travel trailer.

11.     In or around the time and place referenced above, Officer Collier and Officer Murphy[1] arrived at the Business, ostensibly during their patrol of the surrounding area.  At all material times hereto, Officers Collier and Murphy were on duty for the Semmes Police Department, wearing Semmes PD uniforms, and were acting under the color of the law in the course and scope of their employment for the City and/or the Semmes Police Department.

12.     At all material times, the Semmes Police Department Policy Manual was in full force and effect. The City and/or Chief Friend were final policymakers for the Semmes Police Department, vested with the authority to implement and enforce the practices and procedures set forth in the Manual (including, but not limited to, officer training). Officer Collier, Officer Murphy, and/or Chief Friend were trained on, and required to follow, the stated law enforcement policies of the City and/or the Semmes Police Department set forth in the Manual.

13.     Section 311.1 of the Semmes Police Department Policy Manual states: "Both the federal and state constitutions provide every individual with the right to be free from unreasonable searches and seizures."  The Manual additionally provides: "It is the policy of the Semmes Police Department to respect the fundamental privacy rights of individuals.  Members of this department will conduct searches in strict observance of the constitutional rights of persons

---

[1] As of the filing of this Complaint, despite requests from undersigned counsel, the City has not released the names of the officers involved in the subject incident or any body-worn camera footage of the events described herein. Due to the significant information disparity between Plaintiff and Defendants, Plaintiff makes these allegations based on information currently known to him and specifically reserves the right to amend the Complaint once Defendants respond to discovery.

being searched. . . . The Department will provide relevant and current training to officers as guidance for the application of current law, local community standards, and prosecutorial considerations regarding specific search and seizure situations, as appropriate." (§ 311.2).

14.    The Semmes Police Department Policy Manual additionally states: "The U.S. Constitution generally provides that a valid warrant is required in order for a search to be valid. . . Whenever practicable, officers are encouraged to contact a supervisor to resolve questions regarding search and seizure issues prior to electing a course of action." (§ 311.3).

15.    At or around 3:00 a.m. on January 4, 2026, Officers Collier and/or Murphy entered the Business through a pedestrian door on the front of the building. Upon information and belief, before entering the Business, Officers Collier and Murphy did not contact a supervisor, Chief Friend, or anyone else within the chain of command for the City and/or Semmes Police Department to resolve questions of whether they should enter the Business without a warrant.

16.    Upon entering the Business around 3:00 a.m. on January 4th, Officers Collier and Murphy: (1) did not have a warrant to enter the Business; (2) were not invited to enter the Business by Bowman or anyone else on the premises; (3) were not responding to a service call or request for aid at the Business; (4) were not actively pursuing a criminal or suspect who fled into the Business; (5) were not entering the Business to conduct or incidental to a lawful arrest; (6) did not have probable cause to believe a person inside the Business was seriously injured or in imminent danger; and/or (7) were not entering the Business under exigent and/or emergency circumstances.

17.    At no point prior to entering the Business did Officer Collier, Officer Murphy, and/or other Semmes Police Department personnel attempt to contact Bowman or anyone affiliated with the Business even though the shop's phone number was visibly posted on both the road sign and main office door of the Business.

18.    Under the circumstances described immediately above, Officers Collier and Murphy's warrantless entry into the Business and/or their subsequent search of the premises violated the Semmes Police Department Policy Manual, exceeded the Officers' discretionary authority, and was unreasonable, unjustified, unlawful, and/or unconstitutional in that it violated Bowman's clearly established rights under the Fourth Amendment of the U.S. Constitution.

### B.    Officers Collier and/or Murphy Use Excessive, Deadly Force

19.    Immediately after Officers Collier and Murphy unreasonably and/or unlawfully entered the Business as described above, they searched the premises, including the garage bay where Bowman was sleeping on a bed inside his travel trailer, shining their flashlights around and into the travel trailer.  At that same time and place, in the Business's main office – located on the other side of the wall of the garage bay that Officers Collier and Murphy were searching – one of the Business's employees ("Employee") was asleep on a couch after working late into the evening.

20.    As Officers Collier and Murphy searched the Business, Bowman awoke to see flashlights shining around the garage bay and inside his travel trailer.  At no point did Bowman (or Employee) hear Officers Collier and/or Murphy knock on a door, identify themselves as police officers, or say anything whatsoever before they entered and searched the Business.[2]

21.    Under the circumstances presented to Bowman upon being startled awake inside his private property – with unknown people inside his Business without permission, in the middle of the night, shining flashlights around the garage bay and into his travel trailer – Bowman lawfully sought to protect himself from whom he reasonably believed to be criminal and/or dangerous

---

[2] As described below, Bowman said he did not know who shot him during his first 911 call made within minutes of the shooting - further underscoring that Bowman did not know Officers Collier and Murphy were police.

intruders by arming himself with a .22 caliber pistol he owned and kept at the Business for such purposes.

22.     Arming oneself in response to being awakened by unknown intruders inside one's private property in the middle of the night, as Bowman did here, is not a criminal act. To the contrary, Bowman arming himself was a self-protective right that is and was at all material times clearly established by the 2nd Amendment of the U.S. Constitution.

23.     With his .22 caliber pistol in hand, Bowman sat up in his bed and cracked open the trailer door to see who was inside his Business.  When Bowman partially opened the trailer door, Officer Collier and/or Officer Murphy shined their flashlights in his face, temporarily blinding Bowman and preventing him from identifying them as uniformed police officers. Bowman then heard a male voice shout, "He has a gun!" Without lawful justification to do so, and without further communications between the parties or issuing the commands a reasonable well-trained officer would use under the circumstances (e.g., "Police!" or "Drop your weapon!"), Officers Collier and/or Murphy intentionally and/or recklessly fired multiple shots at Bowman with five (5) bullets striking his body.

24.     Prior to Officers Collier and/or Murphy opening fire, Bowman did not fire or point his pistol at the Officers, make threatening remarks, show signs of physical aggression and/or resistance, attempt to flee, or otherwise say or do anything that reasonably indicated Bowman posed an immediate threat to the safety of himself or Officers Collier and Murphy. Instead, Bowman armed himself against whom he perceived to be intruders and only returned fire in self-defense after being shot multiple times by Officers Collier and/or Murphy.

25.     The Semmes Police Department Policy Manual states: "Officers shall use only that amount of force that reasonably appears necessary given the facts and circumstances perceived by

the officer at the time of the event to accomplish a legitimate law enforcement purpose." (§ 300.3). The Manual further provides: "When circumstances reasonably permit, officers should use non-violent strategies and techniques to decrease the intensity of a situation, improve decision-making, improve communication, reduce the need for force, and increase voluntary compliance (e.g., summoning additional resources, formulating a plan, attempting verbal persuasion)." (§ 300.3.1).

26.    Officers Collier and Murphy violated the Semmes Police Department Policy Manual and Bowman's constitutional rights by intentionally, recklessly, and/or unlawfully shooting Bowman multiple times, without any warning or attempt at de-escalation, and when less lethal alternatives were available. Officers Collier and/or Murphy also failed to conduct an objective and/or reasonable assessment of the facts when they repeatedly shot Bowman for merely possessing a gun that was not pointed at anyone.

27.    Under these circumstances, the use of deadly force by Officers Collier and Murphy violated the Semmes Police Department Policy Manual, exceeded the Officers' discretionary authority, and was unreasonable, unjustified, unlawful, and/or unconstitutional in that it violated Bowman's rights under the Fourth Amendment.

## C.    Officers Collier and Murphy, Chief Friend, and/or The City Deliberately Deny Bowman Access to Emergency Aid

28.    Knowing that Bowman had been shot during this altercation, Officers Collier and Murphy then exited the Business while Bowman, grievously wounded and bleeding, dropped his pistol to the floor and fell back into the bed located behind the trailer door.  Bowman then dialed 911 from inside the travel trailer.

29.    Employee remained asleep in the adjacent main office throughout Officer Collier and Officer Murphy's unreasonable and unlawful search of the Business. After waking up to gunfire, Employee ran into the garage bay that housed the Bowman travel trailer to see what

happened. Upon entering the garage bay, Employee did not see Officers Collier and/or Murphy nor any police lights from their cruisers. After noticing broken glass from the trailer door, what appeared to be numerous bullet holes in the trailer wall, and hearing Bowman in distress, Employee entered the travel trailer and attempted to render aid to Bowman.

30.     Shortly after 3:00 a.m., emergency radio traffic on the Mobile County Communications District reported "Gunshot at 7461 Moffett Road" and "Station 1 – Gunshot at Moffett Road and Sun Valley Drive." Upon information and belief, this initial report was related to either Officer Collier or Officer Murphy being grazed in the back when Bowman returned fire. Minutes later, another station was called out to the Business with the following report: "For a gunshot, 7461 Moffett Road…this'll be in reference to the other call the team is going to, but this is a second patient."[3] Upon information and belief, the "second patient" referenced in the latter station call was Bowman.

31.     Accordingly, Officers Collier and/or Murphy had actual knowledge that Bowman had suffered one or more gunshot wounds and was at substantial risk of serious harm and/or death from the same when the Officers exited the Business after the shooting. Additionally, because Bowman's gunshot wounds were immediately reported to emergency dispatch, Chief Friend and/or the City also had actual knowledge that Bowman suffered one or more gunshot wounds and was at substantial risk of serious harm and/or death from the same shortly after the shooting.

32.     The Semmes Police Department Policy Manual requires the Chief of Police – i.e., Chief Friend – to be notified of an officer-involved shooting "as soon as practicable." (§ 305.5.4).

---

[3] *Six 911 Calls Made After Shootout Between Police & Semmes Business Owner*, Fox 10 News, Jan. 5, 2026, https://www.fox10tv.com/2026/01/06/semmes-business-owner-shot-by-police-during-early-morning-burglary-investigation/

Upon information and belief, Chief Friend received actual notice of Bowman's officer-involved shooting shortly after it occurred and in sufficient time to direct the law enforcement response and/or personally appear at the scene. At all material times hereto, Chief Friend was on duty for the Semmes Police Department and was acting under the color of the law in the course and scope of his employment for the City and/or the Semmes Police Department.

33.    Bowman called 911 at approximately 3:06 a.m. to report he had been shot and was "bleeding bad." When the operator asked who shot him, Bowman said "I don't know…They were in the building. I saw flashlights and the shooting started."[4]

34.    At approximately 3:14 a.m., Employee called 911 – the second such call made since the officer-involved shooting – stating that someone had been shot at the Business and that an ambulance was needed "immediately".

35.    At or around 3:22 a.m., Employee placed another 911 call – the third such call since the officer-involved shooting – to check on the status of the ambulance and again request medical help. Upon information and belief, at some point during this third call, the 911 operator communicated orders from Officer Collier, Officer Murphy, Chief Friend, and/or other Semmes Police Department officials that Employee had to exit the Business and walk out to the parking lot with his hands in the air before medical aid would be provided to Bowman. Upon Employee complying with those orders, Officer Collier, Officer Murphy, and/or other Semmes Police Department officials frisked Employee, confiscated his personal effects, handcuffed him, and detained Employee in a police cruiser parked across the street from the Business without reading Employee his Miranda Rights. Upon being detained and questioned in or near the police cruiser,

---

[4] *"They Shot First:" 911 Transcripts Show What Semmes Business Owner Said After Shootout With Police*, Fox 10 News, Jan. 7, 2026, https://www.fox10tv.com/2026/01/08/they-shot-first-911-transcripts-show-what-semmes-business-owner-said-after-shootout-with-police/

Employee informed Officer Collier, Officer Murphy, Chief Friend, and/or other Semmes Police Department officials – approximately 45 minutes before Defendants permitted medical personnel to provide Bowman urgently-needed medical care – that Bowman had thrown his pistol to the floor of the trailer, that Bowman was unarmed, that Bowman had been shot multiple times, including in the stomach, that Bowman was lying on the bed in the trailer and was bleeding profusely, and that Bowman urgently needed medical attention.

36.    The pistol stayed out of Bowman's reach, and he remained unarmed, throughout the remainder of the events described below. The initial round of gunfire shortly after 3:00 a.m., as described above, was the only time weapons were fired at the Business.

37.    Certified medical records from Mobile County EMS show that an ambulance was not dispatched to the Business until around the time of the third 911 call.  Specifically, Mobile County EMS dispatch was notified of Bowman's medical emergency at approximately 3:08 a.m. but the ambulance did not depart its unit station until 3:22 a.m. The ambulance arrived at the scene about 10 minutes later after driving approximately 12 miles to the Business. Upon information and belief, the EMS unit was delayed in dispatching to the scene and/or was prevented from entering the Business to render aid to Bowman by Officers Collier and Murphy, Chief Friend, other Semmes Police Department officials, and/or the City under the pretext that law enforcement had not secured what was purportedly an active shooter scene.

38.    At approximately 3:30 a.m., Bowman called 911 again – his second call for help and the fourth such call since the officer-involved shooting – and Bowman's condition had deteriorated to the point that he was slurring his words. Bowman reported the police were there and said "I've been shot. I'm bleeding everywhere. Somebody – gotta get me to the hospital."

39.    At approximately 4:04 a.m., Bowman called 911 again – his third call for help and the fifth such call since the officer-involved shooting nearly one hour earlier. The transcripts of this fifth call show that Bowman told the 911 operator: "These [cops] are accusing me of shooting them. I didn't shoot anybody. They shot first! And I've got this guy out here yelling at me. And I'm bleeding out. I'm just trying to get help, man. They shot first!"  After clarifying that he had been shot by the police, Bowman continued: "Let them in here.  They are trying to clear this place like some criminal has been in here. They came in my building and never identified themselves. All I saw were lights.  I turned the lights on in my trailer and they started shooting." Before this final 911 call concluded, Bowman said: "If I stand it starts pouring blood. . . . I can't move. If I start moving, I'm going to bleed out. . . . I have no harmful intent to these police officers whatsoever! None!"

40.    Upon information and belief, Officers Collier and Murphy, Chief Friend, other Semmes Police Department officials, and/or the City deliberately withheld medical aid from Bowman until he pulled himself out of bed, exited the travel trailer and then the Business, got down on the ground, and was handcuffed by officers on the scene without being read his *Miranda* rights. Bowman's access to medical treatment was unlawfully conditioned in this manner by Officers Collier and Murphy, Chief Friend, other Semmes Police Department officials, and/or the City despite their actual knowledge of his weakened physical state, his serious injuries, and his lack of any threat to himself or other people on the scene.

41.    Certified records from Mobile County EMS show the ambulance and emergency medical personnel dispatched to the scene were not allowed on the premises of the Business until 4:31 a.m. and were prevented from rendering medical attention to Bowman until 4:32 a.m. – approximately 1.5 hours after the officer-involved shooting and the first 911 call reporting a person

suffering from gunshot wounds at the Business. After rendering medical aid on the scene, EMS personnel loaded Bowman into the ambulance at 4:42 a.m. and transported him to University Hospital, where he arrived at 4:54 a.m.

42.     Officers Collier and Murphy, Chief Friend, other Semmes Police Department officials, and/or the City had no reasonable or lawful justification for denying EMS personnel access to the Business and/or Bowman once the ambulance arrived at the scene. By that time or in close proximity to it, Officers Collier and Murphy, Chief Friend, other Semmes Police Department officials, and/or the City had actual knowledge that no shots had been fired at the Business since the initial exchange of gunfire at approximately 3:00 a.m., that Bowman had discarded his pistol on the floor of the trailer, and that Bowman was both unarmed and severely injured. As such, Officers Collier and Murphy, Chief Friend, other Semmes Police Department officials, and/or the City knew there was not an active shooter situation and/or that Bowman did not pose an immediate threat of harm to anyone when they blocked or otherwise prohibited EMS personnel from reaching and/or providing medical aid to Bowman.

43.     In addition to prohibiting EMS personnel from Bowman, Officers Collier and/or Murphy, Chief Friend, other Semmes Police Department officials, and/or the City did not check on Bowman's condition, provide him with medical treatment or basic first aid, or otherwise attend to Bowman's serious medical needs in the 1.5 hours that followed his officer-involved shooting. Officers Collier and/or Murphy, Chief Friend, other Semmes Police Department officials, and/or the City intentionally and/or recklessly deprived Bowman of medical attention and/or first aid despite having actual knowledge that Bowman had multiple gunshot wounds, was bleeding profusely, had repeatedly called 911 for aid, and would be at substantial risk of serious harm if his medical needs were left unattended or untreated.

44.     The Semmes Police Department Policy Manual states: "Once it is reasonably safe to do so, medical assistance shall be obtained for any person who exhibits signs of physical distress, has sustained visible injury, expresses a complaint of injury or continuing pain, or was rendered unconscious [from an officer's use of force]. Any individual exhibiting signs of physical distress after an encounter shall be continuously monitored until he/she can be medically assessed." (§ 300.6). The Manual additionally requires any supervising officer that reports to the scene of an officer's use of force to "[e]nsure that any injured parties are examined and treated." (§ 300.7).

45.     Officers Collier and Murphy, Chief Friend, other Semmes Police Department officials, and/or the City denied Bowman access to EMS personnel and/or medical treatment (including, but not limited to, basic first aid) as described above with the intent of harming Bowman, with reckless disregard for his safety, and/or with deliberate indifference to Bowman's serious and known medical needs related to his multiple gunshot wounds.

46.     Under these circumstances, the intentional, reckless, and/or careless denial of medical aid by Officers Collier and/or Murphy, Chief Friend, other Semmes Police Department officials, and/or the City violated the Semmes Police Department Policy Manual, exceeded the Officers' discretionary authority, and was unreasonable, unjustified, unlawful, and/or unconstitutional in that it violated Bowman's clearly established rights under the Fourteenth Amendment of the U.S. Constitution.

### D.     Constitutional Violations Endorsed by Chief Friend and/or The City

47.     The Semmes Police Department Policy Manual requires officers and/or supervisors to perform certain investigative and reporting activities in the immediate aftermath of an officer-involved shooting. (§§ 300.5, 301, and 305). Upon information and belief, the recordings from the body-worn and/or dashboard cameras of Officers Collier and Murphy were reviewed by Chief

14

Friend, other Semmes Police Department, and/or City officials during these initial investigative activities.

48.    Additionally, when an officer's use of force results in a serious injury, such as the multiple gunshot wounds Bowman suffered, the Semmes Police Department Policy Manual also requires an investigation and administrative review of the underlying circumstances by the Department's Use of Force Review Board. (§ 301). Among other things, the Manual requires the Use of Force Review Board to submit a written recommendation to the Chief of Police finding that either the officer's use of force and related actions were within Department policy and procedure or were in violation of the same. (§ 301.4.2). The Manual then provides: "The Chief of Police shall review the recommendation, make a final determination as to whether the member's actions were within policy and procedure, and determine whether any additional actions, investigations or reviews are appropriate." (*Id.*).

49.    In media reports following Bowman's shooting, Chief Friend stated Officers Collier and Murphy entered the Business around 3:00 a.m. on January 4th because the front door was wide open and burglaries had been reported in the area that same night.[5] Chief Friend said upon entering the Business, Officers Collier and/or Murphy announced their presence, began searching, and were going to look in the travel trailer where Bowman was sleeping on their way out. Chief Friend stated that upon noticing movement inside the trailer, Officers Collier and/or Murphy ordered the person to come out and "that's when Mr. Bowman opened the door and just opened fire."

---

[5] *Local Business Owner Shot By Police During Early Morning Burglary Investigation*, Fox 10 News, Jan. 5, 2026, https://www.fox10tv.com/video/2026/01/06/local-business-owner-shot-by-police-during-early-morning-burglary-investigation/

50.     Similarly, on January 16, 2026, the City issued a statement regarding Bowman's shooting that said "[t]he Semmes officers acted within the law and policies of the Semmes Police Department." The City's statement further claimed that "the Semmes Police Department…did everything by the book. Any other explanations, or reports, are false."[6]

51.     The statements and information provided to the media by Chief Friend and other City officials were made after and/or were based upon administrative review processes within the Semmes Police Department and/or the City regarding the actions and underlying decisions of Officers Collier and/or Murphy related to Bowman – including, but not limited to, review of the recordings from Officer Collier's and Officer Murphy's body-worn and dashboard cameras and/or the Use of Force Review Board.

52.     Because Officers Collier and Murphy were not reprimanded or disciplined for their unreasonable and unlawful actions in regard to Bowman, and were instead publicly defended by Chief Friend and other City officials in the media, the City and/or its municipal officers and policy makers (including, but not limited to, Chief Friend) ratified and approved the unreasonable and unlawful conduct of Officers Collier and Murphy, and their underlying decisions, in entering the Business without a warrant, using excessive lethal force against Bowman, and/or deliberately preventing Bowman from timely receiving emergency medical treatment for his life-threatening gunshot wounds. As such, all constitutional violations by Officers Collier and Murphy are imputed to Chief Friend and/or the City and render them liable for the same.

53.     The foregoing acts, omissions, systematic failures, and deficiencies are policies and customs of the City which caused officers in the Semmes Police Department, including Officers

---

[6] *City of Semmes Releases Statement Nearly Two Weeks After Police Involved Shooting*, Fox 10 News, Jan. 16, 2026, https://www.fox10tv.com/2026/01/16/city-semmes-releases-statement-nearly-two-weeks-after-police-involved-shooting/

Collier and Murphy, to believe that constitutional violations would be tolerated and that complaints would not be properly investigated, with the foreseeable result that officers would violate the constitutional rights of Bowman and other similarly situated citizens.

54.    Any threat and/or danger allegedly faced by Officers Collier and Murphy on January 4th was officer-created jeopardy arising from their unreasonable and/or unlawful warrantless entry on the Business in violation of Bowman's Fourth Amendment rights.

55.    To date, Bowman has not been charged with any crime related to the subject officer-involved shooting or related events of January 4th.

56.    As a proximate result of the tortious conduct and/or constitutional violations by Defendants described in paragraphs 1-55 above, Bowman suffered catastrophic, permanent injuries and damages including: serious and permanent bodily injuries from being shot 5 times; he underwent multiple surgeries, including: an emergency exploratory laparotomy due to his extensive gunshot trauma, a splenectomy, segmental colectomy, a surgical repair of the left diaphragm, placement of a wound vac, and placement of a transverse colostomy due to bowel discontinuity; he has incurred medical and hospital expenses for treatment of his injuries and will so suffer in the future; he has suffered, still so suffers, and will suffer in the future lost wages and impairment of his earning capacity; he has suffered, still so suffers, and will suffer in the future, physical pain and mental anguish;  he has been permanently injured; and he has suffered, still suffers, and will suffer in the future a loss of enjoyment of life.

## IV.    LEGAL CLAIMS

### COUNT ONE
#### (42 U.S.C. §1983 - Fourth Amendment Violation – Unreasonable Search and Warrantless Entry)

Plaintiff brings this claim against Defendants Collier and Murphy in their individual capacities, stating as follows:

57.    Plaintiff hereby incorporates and re-alleges paragraphs 1-56 as if fully set forth herein.

58.    At all material times, Bowman had a clearly established constitutional right under the Fourth Amendment to the United States Constitution to be free from unreasonable searches and seizures, including the right to be free from warrantless entry into his business premises absent a recognized exception to the warrant requirement.

59.    At all material times, Officers Collier and Murphy were acting under color of state law in their capacities as police officers employed by the City of Semmes and/or the Semmes Police Department.

60.    On or about January 4, 2026, at approximately 3:00 a.m., Officers Collier and Murphy entered Bowman's Business located at 7461 Moffett Road, Semmes, Alabama, without a warrant, without Bowman's consent, and without any lawful justification for doing so.

61.    Specifically, the warrantless entry in Bowman's Business by Officers Collier and/or Murphy was objectively unreasonable under the totality of the circumstances in that they:

(a)    Did not have a warrant to enter the Business;

(b)    Were not invited to enter the Business by Bowman or anyone else on the premises;

(c)    Were not responding to a service call or request for aid at the Business;

(d)    Were not actively pursuing a criminal who fled into the Business;

(e)     Were not entering the Business while conducting or incidental to a lawful arrest;

(f)     Did not attempt to contact Bowman or call the Business phone number that visibly posted on the premises;

(g)     Did not have probable cause to believe a person inside the Business was seriously injured or in imminent danger of injury; and/or

(h)     Were not entering the Business under exigent and/or emergency circumstances.

62.     Prior to entering the Business, Officers Collier and Murphy failed to contact a supervisor, Chief Friend, anyone else within the chain of command for the City and/or Semmes Police Department to resolve questions about whether they should enter the Business, in direct violation of the Semmes Police Department Policy Manual.

63.     The warrantless entry by Officers Collier and Murphy into the Business, and their subsequent search of the premises, was unreasonable, unjustified, and unlawful under clearly established Fourth Amendment law as interpreted by the United States Supreme Court and the Eleventh Circuit Court of Appeals.

64.     The warrantless entry by Officers Collier and Murphy was conducted in violation of the Semmes Police Department Policy Manual, exceeded the Officers' discretionary authority, and was beyond the scope of their lawful authority as peace officers.

65.     The conduct of Officers Collier and Murphy as described herein was willful, malicious, and/or in reckless disregard of Bowman's clearly established constitutional rights, entitling Bowman to an award of punitive damages against Officers Collier and Murphy in their individual capacities.

66.     As a direct and proximate result of the unreasonable and unlawful warrantless entry and search by Officers Collier and Murphy, Bowman suffered constitutional violations, and

suffered catastrophic, permanent injuries and damages including: serious and permanent bodily injuries from being shot 5 times; he underwent multiple surgeries, including: an emergency exploratory laparotomy due to his extensive gunshot trauma, a splenectomy, segmental colectomy, a surgical repair of the left diaphragm, placement of a wound vac, and placement of a transverse colostomy due to bowel discontinuity; he has incurred medical and hospital expenses for treatment of his injuries and will so suffer in the future; he has suffered, still so suffers, and will suffer in the future lost wages and impairment of his earning capacity; he has suffered, still so suffers, and will suffer in the future, physical pain and mental anguish;  he has been permanently injured; and he has suffered, still suffers, and will suffer in the future a loss of enjoyment of life.

WHEREFORE, Plaintiff demands compensatory and punitive damages, in excess of the Court's jurisdictional minimum, against Defendants Collier and Murphy in their individual capacities, in an amount to be determined by the jury, plus interest and costs.

### COUNT TWO
### (42 U.S.C. §1983 - Fourth Amendment Violation – Excessive and Deadly Force)

Plaintiff brings this claim against Defendants Collier and Murphy in their individual capacities, stating as follows:

67.    Plaintiff hereby incorporates and re-alleges paragraphs 1-56 as if fully set forth herein.

68.    At all material times, Bowman had a clearly established constitutional right under the Fourth Amendment to the United States Constitution to be free from the use of unreasonable and excessive deadly force by law enforcement officers.

69.    At all material times, Officers Collier and Murphy were acting under color of state law in their capacities as police officers employed by the City of Semmes and/or the Semmes Police Department.

70.     On or about January 4, 2026, at approximately 3:00 a.m., Officers Collier and/or Murphy used excessive and deadly force against Bowman by intentionally and/or recklessly firing multiple shots at him, with five (5) bullets striking his body, under circumstances in which the use of deadly force was unreasonable, unjustified, and/or unlawful.

71.     The use of deadly force by Officers Collier and/or Murphy was objectively unreasonable under the totality of the circumstances in that:

(a)     Bowman had not committed any crime, much less a serious or violent crime;

(b)     Bowman was lawfully present inside his own private business and was lawfully armed pursuant to the Second Amendment of the United States Constitution;

(c)     Prior to opening fire, Officers Collier and/or Murphy failed to issue any verbal commands to Bowman, including but not limited to universally known commands such as "Police!" or "Drop your weapon!";

(d)     Prior to opening fire, Officers Collier and/or Murphy made no attempt to de-escalate the situation or employ non-lethal alternatives as required by the Semmes Police Department Policy Manual;

(e)     Prior to Officers Collier and/or Murphy opening fire, Bowman did not fire or point his pistol at the Officers, make threatening remarks, show signs of physical aggression and/or resistance, attempt to flee, or otherwise say or do anything that reasonably indicated that Bowman posed an immediate threat to the safety of himself or the Officers; and

(f)     Less lethal alternatives were known by and available to Officers Collier and Murphy and were not employed before resorting to deadly force.

72.    The only threat and/or danger allegedly faced by Officers Collier and/or Murphy on January 4, 2026, was officer-created jeopardy arising directly from their own unreasonable and unlawful warrantless entry into the Business in violation of Bowman's Fourth Amendment rights.

73.    The conduct of Officers Collier and/or Murphy in using excessive and deadly force against Bowman violated the Semmes Police Department Policy Manual, exceeded the Officers' discretionary authority, and was beyond the scope of their lawful authority as peace officers.

74.    The conduct of Officers Collier and/or Murphy as described herein was willful, malicious, and/or in reckless disregard of Bowman's clearly established constitutional rights, entitling Bowman to an award of punitive damages against Officers Collier and/or Murphy in their individual capacities.

75.    As a direct and proximate result of the excessive and deadly force used by Officers Collier and/or Murphy, Bowman suffered Constitutional violations and suffered catastrophic, permanent injuries and damages including: serious and permanent bodily injuries from being shot 5 times; he underwent multiple surgeries, including: an emergency exploratory laparotomy due to his extensive gunshot trauma, a splenectomy, segmental colectomy, a surgical repair of the left diaphragm, placement of a wound vac, and placement of a transverse colostomy due to bowel discontinuity; he has incurred medical and hospital expenses for treatment of his injuries and will so suffer in the future; he has suffered, still so suffers, and will suffer in the future lost wages and impairment of his earning capacity; he has suffered, still so suffers, and will suffer in the future, physical pain and mental anguish;  he has been permanently injured; and he has suffered, still suffers, and will suffer in the future a loss of enjoyment of life.

WHEREFORE, Plaintiff demands compensatory and punitive damages, in excess of the Court's jurisdictional minimum, against Defendants Collier and Murphy in their individual capacities, in an amount to be determined by the jury, plus interest and costs.

**COUNT THREE**
**(42 U.S.C. §1983 – Fourteenth Amendment Violation –**
**Deliberate Indifference to Serious Medical Need)**

Plaintiff brings this claim against Defendants Collier, Murphy, and Friend in their individual capacities, stating as follows:

76.    Plaintiff hereby incorporates and re-alleges paragraphs 1-56 as if fully set forth herein.

77.    At all material times, Bowman had a clearly established constitutional right under the Fourteenth Amendment to the United States Constitution to receive medical care for serious medical needs known to law enforcement officers having custody or control over him, and/or to not be deliberately denied access to emergency medical care by those officers.

78.    At all material times, Officer Collier, Officer Murphy, and/or Chief Friend were acting under color of state law in their respective capacities as police officers employed by the City of Semmes and/or the Semmes Police Department.

79.    Following the officer-involved shooting on January 4, 2026, Bowman suffered from an objectively serious medical condition, namely five (5) gunshot wounds causing profuse bleeding, internal organ damage, and a substantial risk of serious harm and/or death if left untreated.

80.    Officer Collier, Officer Murphy, and/or Chief Friend had actual knowledge of Bowman's gunshot wounds and serious medical condition, in that:

(a)     Officers Collier and/or Murphy personally shot Bowman multiple times and/or witnessed his gunshot wounds;

(b)     Officers Collier and/or Murphy immediately reported their officer-involved shooting at the Business and/or the resulting injuries to a "second patient" (i.e., Bowman) to dispatch at the Semmes Police Department and/or the Mobile County Communications District;

(c)     Chief Friend received actual notice of Bowman's officer-involved shooting shortly after it occurred and in sufficient time to direct the law enforcement response and/or personally appear at the scene;

(d)     Bowman called 911 at approximately 3:06 a.m. reporting that he had been shot and was "bleeding bad";

(e)     Employee called 911 at approximately 3:14 a.m. and again at approximately 3:22 a.m., requesting an ambulance and/or immediate medical attention for Bowman;

(f)     Employee personally informed Officer Collier, Officer Murphy, Chief Friend, and/or other Semmes Police Department officials that Bowman had been shot multiple times, including in the stomach, that Bowman had discarded his pistol on the floor of the trailer and was unarmed, and that Bowman was lying on a bed in the trailer, bleeding profusely, and urgently needed medical attention;

(g)     Bowman called 911 again at approximately 3:30 a.m., at which time his condition had deteriorated to the point that he was slurring his words; and

(h)     Bowman called 911 again at approximately 4:04 a.m., stating that he was "bleeding out" and unable to move without pouring blood.

81.     Despite having actual knowledge of Bowman's serious medical condition, Officer Collier, Officer Murphy, and/or Chief Friend, intentionally and/or recklessly disregarded Bowman's serious risk of harm and medical needs when they:

(a)     Exited the Business after the shooting without rendering any medical treatment or first aid to Bowman;

(b)     Refused and/or failed to provide Bowman with any medical treatment or basic first aid in the approximately 1.5 hours that followed his officer-involved shooting;

(c)     Refused and/or failed to check on Bowman's condition in the approximately 1.5 hours that followed his officer-involved shooting;

(d)     Directed, ordered, and/or otherwise caused the ambulance and emergency medical personnel to be prevented from timely dispatching, entering the Business, and/or rendering medical aid to Bowman until approximately 4:31 a.m., over 1.5 hours after the officer-involved shooting and the first 911 call reporting a person suffering from gunshot wounds at the Business;

(e)     Unlawfully conditioned access to emergency medical aid on Employee exiting the Business with his hands in the air, submitting to a frisk, having his personal effects confiscated, and being handcuffed and detained, thereby further delaying emergency medical treatment; and/or

(f)     Unlawfully conditioned access to emergency medical aid on Bowman pulling himself out of bed, exiting the travel trailer and Business, getting down on the ground, and being handcuffed by officers on the scene, thereby further delaying emergency medical treatment.

82.    Officer Collier, Officer Murphy, and/or Chief Friend deliberately withheld medical aid from Bowman based on the false and/or unlawful pretext that the Business was an active shooter situation that was unsafe for EMS personnel. Specifically, Officer Collier, Officer Murphy, and/or Chief Friend acted with intentional and/or reckless disregard of Bowman's serious medical needs by denying him access to emergency medical care when they had actual knowledge that:

(a)    No shots had been fired at the Business since the initial exchange of gunfire at approximately 3:00 a.m.;

(b)    Bowman had discarded his pistol on the floor of the trailer and was unarmed;

(c)    Bowman had repeatedly called 911 to plead for help;

(d)    Bowman had multiple gunshot wounds and was in a physically weakened and diminished condition;

(e)    Bowman did not pose an immediate threat of harm to anyone; and/or

(f)    There was no active shooter situation at the Business that lawfully justified preventing EMS personnel from rendering aid to Bowman.

83.    The Semmes Police Department Policy Manual required Officer Collier, Officer Murphy, and/or Chief Friend to obtain medical assistance for Bowman "once it is reasonably safe to do so" and to continuously monitor Bowman until he could be medically assessed, and it required any supervising officer at the scene to ensure that injured parties were examined and treated. Officers Collier, Officer Murphy, and/or Chief Friend exceeded their discretionary authority and acted with intentional and/or reckless disregard of Bowman's known medical needs when they violated these mandatory requirements.

84.    The deliberate indifference of Officer Collier, Officer Murphy, and/or Chief Friend violated Bowman's clearly established rights under the Fourteenth Amendment of the United States

Constitution and caused Bowman to suffer prolonged pain and suffering, aggravation of his injuries, and a substantially increased risk of death.

85.     The conduct of Officer Collier, Officer Murphy, and/or Chief Friend, as described herein was deliberate, willful, malicious, and/or in reckless disregard of Bowman's clearly established constitutional rights, entitling Bowman to an award of punitive damages against Officer Collier, Officer Murphy, and/or Chief Friend in their individual capacities.

86.     As a direct and proximate result of the deliberate indifference by Officer Collier, Officer Murphy, and/or Chief Friend, Bowman suffered Constitutional violations and suffered catastrophic, permanent injuries and damages including: serious and permanent bodily injuries from being shot 5 times; he underwent multiple surgeries, including: an emergency exploratory laparotomy due to his extensive gunshot trauma, a splenectomy, segmental colectomy, a surgical repair of the left diaphragm, placement of a wound vac, and placement of a transverse colostomy due to bowel discontinuity; he has incurred medical and hospital expenses for treatment of his injuries and will so suffer in the future; he has suffered, still so suffers, and will suffer in the future lost wages and impairment of his earning capacity; he has suffered, still so suffers, and will suffer in the future, physical pain and mental anguish;  he has been permanently injured; and he has suffered, still suffers, and will suffer in the future a loss of enjoyment of life.

WHEREFORE, Plaintiff demands compensatory and punitive damages, in excess of the Court's jurisdictional minimum, against Defendants Collier, Murphy, and Friend in their individual capacities, in an amount to be determined by the jury, plus interest and costs.

## COUNT FOUR
### (42 U.S.C. § 1983 – Fourteenth Amendment Violation – State Created Danger)

Plaintiff brings this claim against Defendants Collier, Murphy, and Friend in their individual capacities, stating as follows:

87.    Plaintiff hereby incorporates and re-alleges paragraphs 1-56 as if fully set forth herein.

88.    At all material times, Bowman had a clearly established right under the substantive due process clause of the Fourteenth Amendment to the United States Constitution to be free from danger affirmatively created and/or enhanced by state actors.

89.    At all material times, Officer Collier, Officer Murphy, and/or Chief Friend were acting under color of state law in their respective capacities as police officers and Chief of Police employed by the City of Semmes and/or the Semmes Police Department.

90.    Officer Collier, Officer Murphy, and/or Chief Friend, affirmatively created and/or substantially enhanced the danger to Bowman through the following acts:

(a)    Officers Collier and Murphy unlawfully and without warrant entered Bowman's closed Business at 3:00 a.m., affirmatively creating the dangerous confrontation that resulted in Bowman being shot five times;

(b)    Officers Collier and Murphy failed to properly identify themselves as police officers in the immediate moments before the shooting and/or during the shooting, and one or both affirmatively prevented Bowman from recognizing them as law enforcement by, among other things, failing to issue verbal commands to de-escalate the situation (e.g., "Police") and blinding Bowman with flashlight(s), thereby increasing the danger of the confrontation;

(c)    Officers Collier and Murphy shot Bowman multiple times without warning, affirmatively creating Bowman's life-threatening medical emergency; and

(d)    Officers Collier, Murphy, and/or Chief Friend affirmatively blocked and/or otherwise prevented emergency medical personnel from accessing the Business and

rendering aid to Bowman for approximately 1.5 hours, substantially enhancing the danger to Bowman's life and health.

91.     As a result of the foregoing affirmative acts by Officer Collier, Officer Murphy, and/or Chief Friend, Bowman was in a substantially worse position than he would have been absent the Defendants' conduct.

92.     The danger created and/or enhanced by Officers Collier, Murphy, and Chief Friend as described herein was known to them or was so obvious that it should have been known to them.

93.     Officer Collier, Officer Murphy, and/or Chief Friend acted with deliberate indifference to the known danger they created and enhanced, and their conduct shocks the conscience.

94.     The conduct of Officer Collier, Officer Murphy, and/or Chief Friend as described herein was willful, malicious, and/or in reckless disregard of Bowman's clearly established constitutional rights, entitling Bowman to an award of punitive damages against Officer Collier, Officer Murphy, and/or Chief Friend in their individual capacities.

95.     As a direct and proximate result of the conduct described herein by Defendants Collier, Murphy, and Friend, Bowman suffered Constitutional violations and suffered catastrophic, permanent injuries and damages including: serious and permanent bodily injuries from being shot 5 times; he underwent multiple surgeries, including: an emergency exploratory laparotomy due to his extensive gunshot trauma, a splenectomy, segmental colectomy, a surgical repair of the left diaphragm, placement of a wound vac, and placement of a transverse colostomy due to bowel discontinuity; he has incurred medical and hospital expenses for treatment of his injuries and will so suffer in the future; he has suffered, still so suffers, and will suffer in the future lost wages and impairment of his earning capacity; he has suffered, still so suffers, and will suffer in the future,

physical pain and mental anguish;  he has been permanently injured; and he has suffered, still suffers, and will suffer in the future a loss of enjoyment of life.

WHEREFORE, Plaintiff demands compensatory and punitive damages, in excess of the Court's jurisdictional minimum, against Defendants Collier, Murphy, and Friend in their individual capacities, in an amount to be determined by the jury, plus interest and costs.

## COUNT FIVE
### (42 U.S.C. §1983 – Municipal Liability)

Plaintiff brings this claim against Defendant The City of Semmes, stating as follows:

96.    Plaintiff hereby incorporates and re-alleges paragraphs 1-56 as if fully set forth herein.

97.    At all material times, the City, acting through its final policymakers, including but not limited to Chief Friend, was responsible for the implementation, oversight, and enforcement of the policies, procedures, practices, and customs of the Semmes Police Department, as well as the training and supervision of its officers.

98.    The City is liable under 42 U.S.C. § 1983 for the constitutional violations described herein under the following independent and alternative theories:

### a. *Official Policy*

99.    On January 16, 2026, the City issued an official public statement declaring that "[t]he Semmes officers acted within the law and policies of the Semmes Police Department" and that the Semmes Police Department "did everything by the book." This official statement was made after and based upon the City's administrative review of the officer-involved shooting, including but not limited to review of the recordings from Officers Collier's and/or Murphy's body-worn and dashboard cameras and/or the Use of Force Review Board process. By issuing this official statement endorsing the unconstitutional conduct of Officer Collier, Officer Murphy,

and/or Chief Friend the City adopted an official policy of approving and authorizing the warrantless entry, unreasonable use of excessive and deadly force, and deliberate denial of medical care described herein.

### b. Ratification

100.    Chief Friend and other City officials, acting as final policymakers for the City of Semmes and the Semmes Police Department, ratified and approved the unconstitutional conduct of Officer Collier, Officer Murphy, and/or Chief Friend by:

(a)    Publicly defending Officers Collier and Murphy in media statements after reviewing body camera footage and other evidence of the Officers' unreasonable, unlawful, and/or unconstitutional conduct;

(b)    Failing to reprimand, discipline, or otherwise hold Officer Collier, Officer Murphy, and/or Chief Friend accountable for their unconstitutional actions; and

(c)    Issuing the City's official statement dated January 16, 2026, which declared the Officers' conduct lawful and within Semmes PD policy.

101.    Because the City's final policymakers reviewed and approved the specific unconstitutional conduct and the basis for it, as described herein, the City is liable for the resulting constitutional violations.

### c. Failure to Train

102.    The City, acting through its final policymakers including Chief Friend, failed to adequately train Officers Collier and Murphy with respect to:

(a)    The Fourth Amendment warrant requirements and its exceptions, including the circumstances under which officers may lawfully enter private premises (specifically including, but not limited to, businesses) without a warrant;

(b)      The obligation to attempt to contact property owners or occupants before making a warrantless entry onto private premises, especially businesses;

(c)      The obligation to consult a supervisor before making a warrantless entry, as required by the Semmes Police Department Policy Manual;

(d)      The constitutional limitations on the reasonable use of force, including deadly force;

(e)      The obligation to adequately identify themselves as police officers and issue verbal commands before using deadly force;

(f)      De-escalation techniques and the obligation to employ reasonable non-lethal alternatives before resorting to deadly force; and

(g)      The obligation to render or facilitate emergency medical care to persons who have sustained injuries as a result of an officer's use of force.

103.    The City's failure to adequately train its officers in the foregoing respects amounted to deliberate indifference to the constitutional rights of Bowman and other persons with whom Semmes Police Department officers would come into contact.

104.    The need for more and/or different training in the foregoing respects was so obvious, and the inadequacy of the existing training was so likely to result in the violation of constitutional rights, that the City's failure to provide adequate training constitutes deliberate indifference to those rights.

### d.  *Unconstitutional Custom or Practice*

105.    The City of Semmes maintained an unconstitutional custom and practice of:

(a)      Tolerating and permitting warrantless entries by its officers without adherence to constitutional requirements;

(b)     Tolerating and permitting the use of excessive and deadly force by its officers without lawful justification;

(c)     Tolerating and permitting the denial of emergency medical care to persons injured by its officers;

(d)     Failing to honestly and properly investigate complaints of officer misconduct; and

(e)     Fostering a culture in which officers believed that constitutional violations would be tolerated and that misconduct would not result in discipline.

106.     This unconstitutional custom and practice was so persistent and widespread as to constitute a custom with the force of law, and the City's final policymakers had actual or constructive knowledge of this custom and practice and failed to correct it.

107.     As a direct and proximate result of the City's unconstitutional policies, customs, ratification, and failure to train as described herein, Officers Collier and Murphy violated Bowman's constitutional rights as set forth in Counts I through IV above and caused Bowman to suffer catastrophic, permanent injuries and damages including: serious and permanent bodily injuries from being shot 5 times; he underwent multiple surgeries, including: an emergency exploratory laparotomy due to his extensive gunshot trauma, a splenectomy, segmental colectomy, a surgical repair of the left diaphragm, placement of a wound vac, and placement of a transverse colostomy due to bowel discontinuity; he has incurred medical and hospital expenses for treatment of his injuries and will so suffer in the future; he has suffered, still so suffers, and will suffer in the future lost wages and impairment of his earning capacity; he has suffered, still so suffers, and will suffer in the future, physical pain and mental anguish;  he has been permanently injured; and he has suffered, still suffers, and will suffer in the future a loss of enjoyment of life.

WHEREFORE, Plaintiff demands compensatory and punitive damages, in excess of the Court's jurisdictional minimum, against Defendant the City of Semmes in an amount to be determined by the jury, plus interest and costs.

## COUNT SIX
### (42 U.S.C. § 1983 – Supervisory Liability)

Plaintiff asserts this cause of action against Defendant Friend in his individual capacity, stating as follows:

108.    Plaintiff hereby incorporates and re-alleges paragraphs 1-56 as if fully set forth herein.

109.    At all material times, Chief Friend was acting under color of state law in his capacity as Chief of Police of the Semmes Police Department and was a final policymaker for the City of Semmes and/or the Semmes Police Department.

110.    Chief Friend is liable in his individual capacity under 42 U.S.C. § 1983 for the constitutional violations committed by Officers Collier and/or Murphy on the following independent and alternative bases:

*a. Personal Participation*

111.    Chief Friend personally participated in the constitutional violations described herein by directing, ordering, and/or otherwise causing the denial of emergency medical care to Bowman in the approximately 1.5 hours following his officer-involved shooting, including but not limited to directing or causing EMS personnel to be prevented from accessing the Business and rendering aid to Bowman.

### b. *Causal Connection Through Custom and Policy*

112.    There is a causal connection between Chief Friend's actions and omissions as a supervisor and the constitutional violations committed by Officers Collier and Murphy, in that Chief Friend:

(a)    Implemented, enforced, and/or ratified the policies, procedures, customs, and practices that caused Officers Collier and/or Murphy to believe that warrantless entries, unreasonable and excessive use of force, and/or deliberate denial of medical care would be tolerated;

(b)    Failed to adequately train, supervise, and discipline Officers Collier and/or Murphy with respect to the constitutional limitations on searches, use of force, and the obligation to provide or facilitate emergency medical care; and

(c)    Ratified and approved the unconstitutional conduct of Officers Collier and Murphy after the fact through public statements endorsing their conduct and underlying decisions and/or the failure to impose any discipline, thereby creating a custom and practice of tolerating constitutional violations.

### c. *Deliberate Indifference*

113.    Chief Friend's failures in supervision and training amounted to deliberate indifference to the constitutional rights of Bowman and other persons with whom Semmes Police Department officers would come into contact.

114.    As a direct and proximate result of Chief Friend's supervisory failures and personal participation in the constitutional violations described in Subsections a-c herein, caused Bowman to suffer catastrophic, permanent injuries and damages including: serious and permanent bodily injuries from being shot 5 times; he underwent multiple surgeries, including: an emergency

exploratory laparotomy due to his extensive gunshot trauma, a splenectomy, segmental colectomy, a surgical repair of the left diaphragm, placement of a wound vac, and placement of a transverse colostomy due to bowel discontinuity; he has incurred medical and hospital expenses for treatment of his injuries and will so suffer in the future; he has suffered, still so suffers, and will suffer in the future lost wages and impairment of his earning capacity; he has suffered, still so suffers, and will suffer in the future, physical pain and mental anguish;  he has been permanently injured; and he has suffered, still suffers, and will suffer in the future a loss of enjoyment of life.

115.    The conduct of Chief Friend as described herein was willful, malicious, and/or in reckless disregard of Bowman's clearly established constitutional rights, entitling Bowman to an award of punitive damages against Chief Friend in his individual capacity.

WHEREFORE Plaintiff demands compensatory and punitive damages, in excess of the Court's jurisdictional minimum, against Defendant Friend in an amount to be determined by the jury, plus interest and costs.

## COUNT SEVEN
**(Alabama State Law – Assault and Battery)**

Plaintiff asserts this cause of action against Defendants Collier and Murphy in their individual capacities, stating as follows:

116.    Plaintiff hereby incorporates and re-alleges paragraphs 1-56 as if fully set forth herein.

117.    On or about January 4, 2026, Officers Collier and/or Murphy intentionally, willfully, and without lawful justification shot Bowman multiple times, with five (5) bullets striking his body.

118.    The intentional shooting of Bowman by Officers Collier and/or Murphy constituted both an assault, in that it placed Bowman in reasonable apprehension of imminent harmful contact,

and a battery, in that it resulted in the intentional, harmful, and offensive touching of Bowman's person without his consent and without lawful justification.

119.    Officers Collier and Murphy are not entitled to immunity under Ala. Code § 6-5-338 because their conduct was willful, malicious, in bad faith, beyond their authority as peace officers, and/or under a mistaken interpretation of law, in that they entered the Business without lawful authority and shot Bowman without warning, without adequately identifying as police officers, and without lawful justification.

120.    As a direct and proximate result of the assault and battery committed by Officers Collier and/or Murphy, Bowman suffered catastrophic, permanent injuries and damages including: serious and permanent bodily injuries from being shot 5 times; he underwent multiple surgeries, including: an emergency exploratory laparotomy due to his extensive gunshot trauma, a splenectomy, segmental colectomy, a surgical repair of the left diaphragm, placement of a wound vac, and placement of a transverse colostomy due to bowel discontinuity; he has incurred medical and hospital expenses for treatment of his injuries and will so suffer in the future; he has suffered, still so suffers, and will suffer in the future lost wages and impairment of his earning capacity; he has suffered, still so suffers, and will suffer in the future, physical pain and mental anguish;  he has been permanently injured; and he has suffered, still suffers, and will suffer in the future a loss of enjoyment of life.

121.    The conduct of Officers Collier and Murphy as described herein was intentional, willful, and/or malicious, entitling Bowman to an award of punitive damages against Officers Collier and Murphy.

WHEREFORE Plaintiff demands compensatory and punitive damages, in excess of the Court's jurisdictional minimum, against Defendants Collier and Murphy in an amount to be determined by the jury, plus interest and costs.

**COUNT EIGHT**
**(Alabama State Law – Wantonness)**

Plaintiff asserts this cause of action against Defendants Collier, Murphy, and Friend in their individual capacities, stating as follows:

122.    Plaintiff hereby incorporates and re-alleges paragraphs 1-56 as if fully set forth herein.

123.    At all material times, Officer Collier, Officer Murphy, and/or Chief Friend owed Bowman a duty to act with reasonable care in the performance of their law enforcement duties, including but not limited to the duties to conduct searches and seizures in compliance with constitutional requirements, refrain from using unreasonable and excessive force, and to render or facilitate emergency medical care for persons knowingly injured in an officer-involved shooting.

124.    Officers Collier and Murphy acted wantonly in the following respects:

(a)    Entering the Business without a warrant, without consent, and without any lawful exception to the warrant requirement, with conscious disregard for Bowman's constitutional rights and the danger such entry would create;

(b)    Failing to adequately identify themselves as police officers before opening fire, with conscious disregard for the substantial certainty that such failure would result in serious injury or death;

(c)    Firing multiple shots at Bowman without warning and/or without attempting de-escalation, with conscious disregard for the likelihood of causing death or serious bodily injury; and

(d)    Blocking or otherwise preventing emergency medical personnel from rendering aid to Bowman for approximately 1.5 hours after the shooting, with actual knowledge of Bowman's life-threatening gunshot wounds and with conscious disregard for the substantial likelihood that such delay would result in Bowman's death and/or aggravation of his injuries.

125.    Chief Friend acted wantonly in the following respects:

(a)    Directing, ordering, and/or otherwise causing emergency medical personnel to be prevented from accessing the Business and rendering aid to Bowman, with actual knowledge of Bowman's life-threatening gunshot wounds and with conscious disregard for the substantial likelihood that such delay would result in Bowman's death and/or aggravation of his injuries; and

(b)    Failing to supervise, train, and discipline Officers Collier and/or Murphy with respect to constitutional limitations on searches, use of force, and the duty to render or facilitate emergency medical care following an officer-involved shooting, with conscious disregard for the likelihood that such failures would result in constitutional violations and serious injury to persons such as Bowman.

126.    Officer Collier, Officer Murphy, and/or Chief Friend, are not entitled to immunity under Ala. Code § 6-5-338 because their wanton conduct constitutes willful, malicious, and/or bad faith conduct beyond the scope of their authority as peace officers.

127.    As a direct and proximate result of the wanton conduct of Officer Collier, Officer Murphy, and/or Chief Friend as described herein, Bowman suffered catastrophic, permanent injuries and damages including: serious and permanent bodily injuries from being shot 5 times; he underwent multiple surgeries, including: an emergency exploratory laparotomy due to his

extensive gunshot trauma, a splenectomy, segmental colectomy, a surgical repair of the left diaphragm, placement of a wound vac, and placement of a transverse colostomy due to bowel discontinuity; he has incurred medical and hospital expenses for treatment of his injuries and will so suffer in the future; he has suffered, still so suffers, and will suffer in the future lost wages and impairment of his earning capacity; he has suffered, still so suffers, and will suffer in the future, physical pain and mental anguish;  he has been permanently injured; and he has suffered, still suffers, and will suffer in the future a loss of enjoyment of life.

128.    The wanton conduct of Officer Collier, Officer Murphy, and/or Chief Friend, as described herein entitles Bowman to an award of punitive damages against each of them.

WHEREFORE Plaintiff demands compensatory and punitive damages, in excess of the Court's jurisdictional minimum, against Defendants Collier, Murphy, and Friend in an amount to be determined by the jury, plus interest and costs.

## PLAINTIFF DEMANDS TRIAL BY JURY.

**Dated: March 13, 2026**

/s/ *Bryan E. Comer*
BRYAN E. COMER (COM015)
bryan@tobiascomerlaw.com

/s/ *Lacey D. Smith*
LACEY D. SMITH (DAU010)
lacey@tobiascomerlaw.com

**TOBIAS & COMER LAW**
Attorneys for Plaintiff
1203 Dauphin Street
Mobile, Alabama 36604
Telephone: (251) 432-5001
Facsimile: (251) 432-0714

**<u>SERVICE INFORMATION:</u>**
**City of Semmes**
c/o Olivia Zirlott – City Clerk
P.O. Box 1757
Semmes, AL 36575

**Austin Collier**
c/o Olivia Zirlott – City Clerk
P.O. Box 1757
Semmes, AL 36575

**Brandon Murphy**
c/o Olivia Zirlott – City Clerk
P.O. Box 1757
Semmes, AL 36575

**Todd Friend**
c/o Olivia Zirlott – City Clerk
P.O. Box 1757
Semmes, AL 36575